IN THE UNITED STATES DISTRICT COURT, DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| BRIAN A. MATULONIS | * | |
| 2415 Alma Road | * | |
| Baltimore, Maryland 21227 | * | |
| (BALTIMORE COUNTY) | * | |
| | * | Civil   No.   _____ |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| BALTIMORE CITY POLICE | * | |
| DEPARTMENT | * | |
| 601 E. Fayette Street | * | |
| Baltimore, Maryland 21202 | * | |
| (BALTIMORE CITY) | * | |
| | * | |
| *Serve on:* | * | |
|    Daniel Beck, Esquire | * | |
|    *Office of Legal Affairs* | * | |
|    100 N. Holiday Street, Suite 101 | * | |
|    Baltimore, Maryland 21202 | * | |
| | * | |
| Defendant. | * | |

*******************************************************************

## COMPLAINT FOR DAMAGES UNDER TITLE VII AND JURY TRIAL DEMAND

**(Race & Sex Discrimination and Retaliation)**

Plaintiff, Brian A. Matulonis, by and through undersigned counsel, hereby brings this action pursuant to Title VII of the Civil Rights Act of 1654 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, as amended by the Civil Rights Act of 1991 to remedy acts of employment discrimination and retaliation against him by his employer, Defendant Baltimore City Police Department ("BPD"), and in support thereof, states the following:

### I.   JURISDICTION AND VENUE

1. This action arises under the provisions of Title VII and the Fourteenth Amendment to the United States Constitution.

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper in this Court pursuant to 42 U.S.C. § 2000e and 28 U.S.C. § 1391.

4. The Court has personal jurisdiction over the BPD as a citizen of Maryland or as a person who transacts business within the State of Maryland.

## II.   PARTIES

5. Plaintiff is an adult citizen of the United States and a resident of the State of Maryland.

6. The BPD is a municipal police department created by the State of Maryland whose jurisdiction encompasses Baltimore, Maryland.

7. All at times relevant, Plaintiff was employed by the BPD.

8. At all times relevant, the BPD was an "employer" as defined by 42 U.S.C. § 2000e(b) and employed the requisite number of employees to make it subject to Title VII.

## III.   ADMINISTRATIVE PROCEEDINGS

9. Plaintiff timely dual filed a Charge of Discrimination with the Maryland Commission on Civil Rights ("MCCR") and the United States Equal Opportunity Commission ("EEOC"), alleging race and sex discrimination and retaliation. The EEOC retained jurisdiction over the Charge of Discrimination.

10. The EEOC did not hold a fact-finding conference, but rather issued a finding of no probable cause based upon the BPD's written Position Statement, which did not contain any affidavits or admissible evidence.

11. On August 22, 2019, the EEOC issued Plaintiff a Notice of Right to Sue. (Ex. 1.)

12. Plaintiff timely files this Complaint within 90 days of receipt of the Notice.

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

## IV. FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

13. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 11 with the same effect as if fully set forth herein.

14. Plaintiff is a Caucasian male. He has been a decorated member of the BPD since 1989.

15. In June 2010, Plaintiff was a Lieutenant with the BPD, was serving as the Acting Commander of the Criminal Investigation Division ("CID") Regional Warrant Apprehension Task Force ("WATF") and receiving Captain-level pay. He oversaw 84 sworn employees, 2 civilians, and 13 supervisors. It is undisputed that Plaintiff excelled in his position and no performance issues were ever reported or documented.

### *A. The 2015 Charge of Discrimination.*

16. On September 25, 2015, Plaintiff was involuntarily transferred out of WATF by Col. Stanley Brandford (African American/Male). Plaintiff was one of four (4) Caucasian Male Lieutenants that were ultimately transferred out of the Operational Intelligence Division (OID) by Col. Brandford and replaced by African American male lieutenants; one of which was a newly appointed lieutenant.

17. On October 1, 2015, Plaintiff filed a Charge of Discrimination against the BPD with the EEOC, Charge Number 531-2016-00004, based upon race; thereby engaging in a protected activity (hereinafter "the 2015 Charge"). The EEOC referred the Charge to the Baltimore Community Relations Commission (BCRC) on January 12, 2016. A Fact-Finding

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

3

Conference on the Charge was held on May 4, 2016. Thereafter, Plaintiff's 2015 Charge against the BPD remained in limbo for over two (2) years.

18. On July 12, 2018, the BCRC issued a written decision, finding no probable cause. Plaintiff filed an appeal of the decision because the BCRC's findings of fact were incorrect and unsubstantiated and the BCRC erred in its finding as a matter of law. The appeal was subsequently transferred to the EEOC and is currently awaiting a decision.

19. Since the filing of the 2015 Charge, Plaintiff has been subjected to additional discrimination and retaliation. Specifically, on or about April 9, 2018 the BPD selected Major Kimberly Burrus, a less qualified African American/Female for the Fellowship Program with the International Association of Chiefs of Police ("IACP"). In addition, Plaintiff has been subjected to a disproportionate number of urinalysis in comparison to his colleagues; thereby raising the inference that the selection process has been manipulated.

### B. *Plaintiff is Rejected for the IACP Fellowship Program based upon his gender/sex (Male), Race (Caucasian) and/or in Retaliation for Engaging in a Protected Activity.*

20. Commissioner De Sousa's decision to reject Plaintiff from the IACP Fellowship Program was discriminatory based on his gender/sex (Male), race (Caucasian), and/or in retaliation bringing and maintaining the 2015 Charge.

21. The IACP is a professional association for law enforcement worldwide. The IACP offers a visiting Law Enforcement Fellowship Program, which provides an exceptional leadership training opportunity. The IACP Fellowship Program is a highly selective leadership development program devoted to expanding the knowledge and awareness of up-and-coming law enforcement leaders. Officers selected for the IACP Fellowship Program (a) develop the leadership skills; (b) enhance their subject matter expertise on various topical areas to increase their leadership

4

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

capacity; (c) enhance their skills for project management including proposal writing, project leadership, and budget oversight; (d) interact with high-level enforcement stakeholders and policy makers; (e) strengthen their capacity to solve problems and create informed solutions; (f) gain knowledge of the model policy and training curricula development process; (g) collaborate with other IACP fellows from different agencies; (h) are invited to attend the IACP Annual Conference and Exposition; and, (i) are invited to author a *Police Chief* article.

22. On February 13, 2018, the BPD's Office of the Commissioner emailed the entirety of the BPD, calling upon "any Lieutenant" to submit an email and resume expressing their interest in the IACP Fellowship Program. On that same day, Plaintiff submitted his request to Police Commissioner Darryl De Sousa ("Commissioner De Sousa") (African American/Male) for a Fellowship with the IACP.

23. Upon information and belief, Commissioner De Sousa was the final decision maker and selected the BPD's candidate for the IACP Fellowship Program.

24. On February 21, 2018, Major Steve Hohman (Caucasian/Male) ("Maj. Hohman") Plaintiff's Commanding Officer at the Special Investigations Section ("SIS"), nominated Plaintiff for the fellowship and sent his recommendation to Commissioner De Sousa. In his recommendation, Maj. Hohman advised Commissioner De Sousa that:

> Lt. Matulonis brings a wealth of experience and knowledge to the table. He is the senior lieutenant within the Baltimore Police Department and has served in many leadership roles. He holds both a Bachelor's and Master's degree in Executive Management and Public Safety Leadership from the Johns Hopkins University.
>
> Lt. Matulonis currently commands several units within the Special Investigation Section to include the Arson Unit, Animal Abuse Unit, and Economic Crimes Unit. One of the unique aspects of the Special Investigation Section is its partnerships with outside agencies and service providers. As a commander in Special Investigation Section, Lt. Matulonis works closely with Animal Control, Fire Department, and ATF to name a few. I have seen those

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

relationships grow over the years that Lt. Matulonis has served under my command. It takes true leadership to manage those relationships and to foster a team atmosphere among multiple agencies, and that is just what Lt. Matulonis has done.

I have no doubt that, if chosen, Lt. Matulonis will represent the BPD well and will continue as a leader utilizing the skills and lessons he will learn through a fellowship with the IACP. I highly recommend him for the position.

25. Based upon the criteria identified by the BPD in the February 13, 2018 email, Plaintiff was eminently qualified for selection for the IACP Fellowship Program. The BPD did not identify any further criteria for consideration or selection for the IACP Fellowship Program, nor did the BPD disclose the manner or method utilized for selecting the chosen candidate.

26. Despite his superior qualifications, Plaintiff was not selected by the BPD to attend the IACP Fellowship Program. Instead, in or about March 2018, the BPD by and through Commissioner De Sousa selected Major Kimberly Burrus (African American/Female) ("Maj. Burrus"), who was less qualified than Plaintiff.

27. At the time of her appointment to the IACP Fellowship Program, Maj. Burrus was under investigation by the BPD for an allegation of theft. In 2015, Maj. Burrus funded a nonprofit organization called "Blue Love Across America" after the Freddy Gray unrest in Baltimore. The purpose of the organization was to improve relations between police and citizens; however, the nonprofit organization stopped operating in 2016. During a December 2017 custody hearing between Maj. Burris and her husband, Capt. Torran Burrus, she admitted to using the nonprofit's credit card to buy plane tickets for her and her sons for a personal vacation after her own credit cards were declined. Maj. Burrus further admitted that she decided not to return the funds. Cpt. Torran Burrus reported the alleged theft to the BPD's Office of Internal Affairs, although she was not suspended from the department until June 2018.

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

28. Despite the fact that Maj. Burrus was under investigation for a theft allegation, Commissioner De Sousa, an African American Male, selected her, an African American Female for the IACP Fellowship Program over Plaintiff, a Caucasian Male. It was only after the theft investigation and suspension was reported in the media in June 2018 that Maj. Burrus was removed by the BPD from the IACP Fellowship Program.

29. The BPD's selection of Maj. Burrus, by and through Commissioner De Sousa was based upon gender/sex discrimination (preference for Female over Male), and/or racial discrimination (preference for African American over Caucasian), and/or in retaliation against Plaintiff for filing the 2015 Charge.

30. Plaintiff asserts that the BPD and Commissioner De Sousa knew that Plaintiff had filed the 2015 Charge and had engaged in a protected activity because he was the Deputy Police Commissioner under Former Commissioner Kevin Davis ("Fmr. Commr. Davis") when Human Resource Order ("HRO") 275-17 was issued. HRO 275-17 was the order that reflected that Plaintiff's transfer from WATF to the Arson Unit, despite the fact that the actual transfer had taken place in 2015. Further, Plaintiff filed a grievance with the BPD following his transfer to the Arson Unit and upon information and belief, Commissioner De Sousa would have known or been made aware of such information about Plaintiff when he made the decision to reject him for the IACP Fellowship Program.

31. The BPD, while under the leadership of Commissioner De Sousa, "fast-tracked" African American officers for promotions and leadership opportunities as part of an overall pattern and practice of discrimination against Caucasian officers. By way of example, on January 16, 2018, Fmr. Commr. Davis (Caucasian/Male), made a number of personnel decisions reflected in HRO 18-18. Commissioner De Sousa, then a Deputy Commissioner within the BPD, participated

7

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

in a round table meeting prior to the promotional decisions reflected in HRO 18-18. Fmr. Commr. Davis took the following personnel actions:

- James Hanley (Caucasian/Male) was promoted to Acting Inspector
- Donald Bauer, III (Caucasian/Male) was promoted to Acting Chief
- Byron Conaway (African American/Male) was promoted to Acting Inspector
- James Rhoden (Caucasian /Male) was promoted to Acting Major
- Dion Hatchett (African American /Male) was promoted to Acting Major
- Daryl Gaines (African American /Male) was promoted to Acting Captain
- Sean Brown (African American /Male) was promoted to Acting Captain
- Lisa Robinson (African American /Female) was promoted to Acting Captain
- Dwayne Swinton (African American /Male) was promoted to Acting Captain

32. On January 19, 2018, Fmr. Commr. Davis was fired, and Commissioner De Sousa was appointed to lead the BPD. His first personnel decisions were memorialized on February 2, 2018 in HRO 172-18, which show pattern and practice of discrimination against Caucasian officers. Commissioner DeSousa impermissibly made command-level employment decisions based upon race, promoting all of the African American command members, while demoting and/or not honoring the promotions of all of the Caucasian command members:

- Acting Chief Donald Bauer (**Caucasian**/Male) was **demoted** to Lt. Colonel;
- Acting Inspector James Handley (**Caucasian** /Male) was **demoted** to Major;
- Major Martin Bartness (**Caucasian** /Male) was **demoted** to Lieutenant;
- Major Latonya Lewis (**African American**/Female) was **promoted** to Lt. Colonel;
- Acting Major Dion Hatchett (**African American** /Male) was **promoted** to Major;
- Acting Inspector Byron Conaway (**African American** /Male) was **promoted** to Colonel;
- Acting Captain Daryl Gains (**African American** /Male) was **promoted** to Captain;
- Acting Captain Sean Brown (**African American**/Male) was **promoted** to Captain;
- Acting Captain Lisa Robinson (**African American** /Female) was **promoted** to Captain;
- Acting Captain Dwayne Swinton (**African American** /Male) was **promoted** to Captain.

33. There is also direct evidence of the BPD's racial discrimination. On February 26, 2018, during a Command Retreat, Commissioner De Sousa stated that the BPD suffers from

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

8

"PMS – Pale, Male, Stale." He further stated that it was his goal is to move and remove the "PMS elements" from the BPD. As Commissioner De Sousa was the final decision maker in determining which BPD officer was selected for the IACP Fellowship, his choice in selecting an African American Female over Plaintiff, a Caucasian Male, was nothing less than racial and/or sex discrimination.

34. Commissioner DeSousa's decision to reject Plaintiff's application for the IACP Fellowship was a materially adverse employment decision. The IACP Fellowship Program contributes significantly to an officer's professional advancement and can lead to future promotions, raises, bonuses, etc. By way of example, Commissioner De Sousa participated in the IACP Fellowship Program and he advanced to the highest position within the BPD before his resignation after being criminally charged with failing to file and/or pay personal taxes.

35. Any defense set forth by the BPD as to the selection of Maj. Burris for the IACP Fellowship Program as more qualified that Plaintiff is pretextual. At the time that Maj. Burris was selected, she was under investigation for an allegation of theft. By comparison, Plaintiff had served with distinction for his entire career with the BPD. He was also highly recommended for the Fellowship by his Maj. Hohman. Moreover, Commissioner De Sousa's comments and actions at the February 26, 2018 Command Retreat show his preference for promoting and selecting African Americans and, more particularly, African American Females. When Commissioner De Sousa made his "Pale, Male, Stale" comment, he forced all of the African American Females in the room to stand. By doing so, he was expressing his belief that African American Females were under-represented in the department. By then stating that the department suffered from "PMS," Commissioner De Sousa expressed his preference for selecting African American Females for

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

9

leadership positions and opportunities within the department. Commissioner De Sousa's actions and statements are direct evidence of racial and/or sex discrimination.

### C. *Plaintiff has been subjected to excessive drug urinalysis testing in retaliation for engaging in protected activities.*

36. The BPD knew that Plaintiff filed the 2015 Charge and that it was still pending at each instance when they called him for drug urinalysis testing.

37. BPD Policy 1720 provides for the department's policy concerning drug urinalysis testing. According to the policy, employees of BPD's Specialized Units mentioned in the policy are required to receive annual testing. Otherwise, based on a "random selection process," members are selected to submit a urine sample. Finally, the BPD can order a "reasonable suspicion test."

38. Plaintiff has never been asked for a drug urinalysis test based upon "reasonable suspicion."

39. Since Plaintiff's involuntary transfer to SIS Arson Unit in September 2015, has been subjected excessive drug urinalysis testing in retaliation for engaging in protective activities; namely filing and pursuing the 2015 Charge.

40. When Plaintiff was involuntarily transferred out of the WATF Unit on September 25, 2015 and to the SIS Arson Unit (the subject of the 2015 Charge), he was no longer subject to mandatory annual drug testing under Policy 1720 because (1) he was not directly involved in handling, testing or storing Controlled Dangerous Substances; and (2) he was no longer assigned or detailed to one of the Specialized Units that requires annual urinalysis.

41. Even assuming arguendo that during the subject time period (2016 through 2018), the SIS Arson Unit somehow fell under the auspices of CID, which Plaintiff disputes, BPD Policy

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

10

1720 does not subject "all personnel" assigned to CID to required annual drug urinalysis testing. Instead, the policy sets forth specific sections under CID that are subject to annual testing and the following CID Sections and/or Subsections are identified:

> 1.5     Criminal Investigation Division (CID)
>
>     1.5.1   Crime Laboratory Section
>         1.5.1.1 CDS Chemists
>         1.5.1.2 Chemistry Section Supervisors
>         1.5.1.3 Drug Section Supervisors
>         1.5.1.4 Latent Print
>         1.5.15  DNA Technician
>
>     1.5.2   Task Force and HIDTA
>
>     1.5.3   Vice
>
>     1.5.4   Special Enforcement Section
>
>     1.5.5   Criminal Intelligence Section

42.    Between September 25, 2015 through March 28, 2018 (the date of the last complained-of drug urinalysis testing), Plaintiff was not assigned to the CID or any of the Sections or Subsections identified under Policy 1720 Section 1.5.

43.    Plaintiff denies that he would have subjected to annual drug urinalysis testing after September 25, 2015 and while he remained assigned to the Arson Unit.

44.    Pursuant to Policy 1720, Plaintiff should only have been selected for drug urinalysis testing per the "random" process set forth in the policy.

45.    According to the policy, the BPD's Human Resource Section supplies the BPD sequence numbers and names of persons, subject to testing, to the Baltimore City Mayor's Office of Information Technology and a computerized random selection process is utilized to select the individuals to be tested.

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

46. Although the BPD will contend that the selection process is beyond their control; the statistics show that the process is being manipulated. Plaintiff asserts that the manipulation is being done by the BPD in retaliation for his protected activities.

47. Since Plaintiff filed the 2015 Charge, Plaintiff has been subjected to drug urinalysis testing on (1) February 2, 2016; (2) August 31, 2016; (3) February 14, 2017; (4) September 21, 2017; (5) January 23, 2018; and (6) March 28, 2018.

48. Plaintiff is familiar with the drug testing policy and practices. As the Acting Commander at WATF, he would receive the notification list for those officers selected for drug testing on a daily basis. At most, the BPD selects four (4) officers per day for testing. This list consists of those officers qualifying for mandatory annual testing **and** those selected using the "random" selection procedure.

49. At all times relevant, the BPD has in/about 3,100 sworn and civilian personnel who could potentially be subjected to drug testing. Therefore, statistically, the odds of being randomly selected for drug testing is *less than* **1%** (4/3,100 = .12%). Moreover, if the BPD drug tests four (4) employees per day, five (5) days a week, then 1,040 or 33.54% (1,040/3,100) of the work force should be randomly selected for drug testing *annually*.

50. In comparison to the following members of CID and/or SIS, Plaintiff has been called for drug urinalysis testing well in excess of the statistically odds and/or Policy 1920; thereby showing that the process is intentionally being manipulated by the BPD in retaliation for Plaintiff's protected activities:

- Det. Elkner (Caucasian/Male) has been assigned to the CID since 2001 and, over his 17-year career with the BPD has been selected for drug tested "maybe" four (4) or five (5) times.

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

- Sgt. Berry (Caucasian /Male) has been assigned to CID since 2013 and has **never** been selected for drug testing. In addition, he has been employed with the BPD for a total of 17 years and has only been selected for drug testing on "maybe" two (2) occasions.

- Lt. Brian McGarry (Caucasian/Male) has been assigned to SIS since 2013 and he has never been sent for drug urinalysis testing.

51. Plaintiff was selected for drug testing **twice in 2016; twice in 2017; and, twice in 2018**. The BPD has manipulated the drug testing selection procedure such that Plaintiff is being disproportionately chosen for testing.

52. Subjecting Plaintiff to a disproportionate number of drug tests since the filing of his 2015 Charge constitutes a materially adverse action because a reasonable employee, subjected to excessive drug testing, might be dissuaded from making or supporting a charge of discrimination.

53. By being excessively selected for drug urinalysis, Plaintiff felt that he was being punished for pursing the 2015 Charge and that the BPD was seeking to find a reason to terminate his employment. He was also embarrassed and humiliated by being called upon by his superior officers to report for drug urinalysis on an excessive basis, more so that any of his co-workers.

54. There is a causal connection and/or temporal proximity between Plaintiff's protected active activities and being subjected to retaliatory drug urinalysis testing. Plaintiff filed the 2015 Charge on October 1, 2015. Four (4) months later, on February 2, 2016, Plaintiff was called for a drug urinal test. Furthermore, Plaintiff appears to be a regularly schedule for the so-called random drug testing, as the BPD appears to insist on testing him every six (6) months or less. In fact, within one (1) month after the BPD learned that Plaintiff had obtained representation in his EEOC claims, he was selected for an additional "random" drug test on March 28, 2019.

55. Any defense set forth by the BPD as to Plaintiff's retaliation claim for disproportionate drug urinalysis testing is pretextual.

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

13

## COUNT I
### Racial Discrimination in Violation of
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et. seq.*

56. The forgoing paragraphs are realleged and incorporated by reference herein.

57. Plaintiff was in a protected class based on his race (Caucasian).

58. Plaintiff was qualified for the IACP Fellowship Program.

59. Plaintiff was not selected for the IACP Fellowship Program.

60. A less qualified African American was selected for the IACP Fellowship Program.

61. The BPD's conduct in failing to select Plaintiff for the IACP Fellowship Program constitutes discrimination based on race in violation of Title VII.

62. The reasons stated for the BPD's failure to select Plaintiff for the IACP Fellowship Program were not the true reasons, but instead were pretext to hide the BPD's discriminatory animus.

## COUNT II
### Sex (Gender) Discrimination Violation of
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et. seq.*

63. The forgoing paragraphs are realleged and incorporated by reference herein.

64. Plaintiff was in a protected class based on his sex (Male).

65. Plaintiff was qualified for the IACP Fellowship Program.

66. Plaintiff was not selected for the IACP Fellowship Program.

67. A less qualified Female was selected for the IACP Fellowship Program.

68. The BPD's conduct in failing to select Plaintiff for the IACP Fellowship Program constitutes discrimination based on sex (gender) in violation of Title VII.

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

69. The reasons stated for the BPD's failure to select Plaintiff for the IACP Fellowship Program were not the true reasons, but instead were pretext to hide the BPD's discriminatory animus.

## COUNT III
**Retaliation for Engaging in Protected Activities – Rejection for the IACP Fellowship Program in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et. seq.***

70. The forgoing paragraphs are realleged and incorporated by reference herein.

71. Plaintiff engaged in protected activities filing and pursing the 2015 Charge.

72. Plaintiff suffered materially adverse action taken by the BPD when he was denied selection for the IACP Fellowship Program.

73. There is a causal connection between Plaintiff's protected activities and the BPD's failure to select him for the IACP Fellowship Program.

74. The BPD's conduct constitutes retaliation against Plaintiff because he engaged in activities protected by Title VII.

75. The reasons stated for the BPD's failure to select Plaintiff for the IACP Fellowship Program were not the true reasons, but instead were pretext to hide the BPD's retaliatory animus.

## COUNTY IV
**Retaliation for Engaging in Protected Activities – Drug Urinalysis Testing in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et. seq.***

76. The forgoing paragraphs are realleged and incorporated by reference herein.

77. Plaintiff engaged in protected activities filing and pursing the 2015 Charge.

78. Plaintiff suffered materially adverse action taken by the BPD when he subjected to excessive drug urinalysis testing.

79. Thee is a causal connection between Plaintiff's protected activities and the BPD's selective and excessive enforcement of the drug testing policy against Plaintiff.

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

80. The BPD's conduct as alleged with regard to Plaintiff's disproportion drug urinalysis testing constitutes retaliation against Plaintiff because he engaged in activities protected by Title VII.

81. The reasons stated for the BPD for Plaintiff excessive drug urinalysis testing were not the true reasons, but instead were pretext to hide the BPD's retaliatory animus.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Brian A. Matulonis, respectfully prays that this Court grant him the following relief:

A) Grant judgment in favor of Plaintiff and declare that Defendant has violated Title VII.

B) Enter a permanent injunction directing Defendant to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future.

C) Award Plaintiff back pay with interest; back pension benefits with interest; front pay; compensatory damages, including damages for pain and suffering, reputational loss, humiliation, embarrassment, and emotional distress as a result of Defendant's violation of Title VII.

A) Award Plaintiff reasonable attorneys' fees and costs incurred in this action; and,

B) Order such other and further relief as this Court deems just and equitable.

## JURY TRIAL DEMAND

Plaintiff Brian A. Matulonis requests a trial by jury as to all Counts.

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

16

/s/ [signature]
Danielle E. Marone, Esq.
US District Court Bar # 27835
Schmidt, Dailey & O'Neill, LLC
300 East Lombard Street, Suite 1440
Baltimore, Maryland 21202
Phone: (410) 783-1296
Fax: (410) 783-1316
dmarone@sdolaw.com
*Attorney for Plaintiff Brian A. Matulonis*

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

17